IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROGER P. JACKSON, M.D.,

    Plaintiff,

v.

SEASPINE HOLDINGS CORPORATION,

    Defendant.

Civil Action No. 20-1784-RGA

MEMORANDUM

Before me is Defendant's Motion to Dismiss. (D.I. 11). Specifically, Defendant moves to dismiss Counts One, Two, Eight, Nine, and Ten under Rule 12(b)(7) for failure to join a necessary party; and to dismiss Plaintiff's claims for induced infringement, contributory infringement, infringement under the doctrine of equivalents, and willful infringement under Rule 12(b)(6). I have reviewed the parties' briefing. (D.I. 12, 16, 17).

**I. BACKGROUND**

In his First Amended Complaint, Plaintiff Roger P. Jackson, M.D. alleges that Defendant SeaSpine Holdings Corporation infringes twelve patents: U.S. Patent Nos. 7,377,923 ("the '923 patent"); 10,588,667 ("the '667 patent"); 8,540,753 ("the '753 patent"); 10,278,740 ("the '740 patent"); 10,561,445 ("the '445 patent"); 10,952,777 ("the '777 patent"); 9,662,143 ("the '143 patent"); 8,298,265 ("the '265 patent"); 10,349,983 ("the '983 patent"); 10,524,840 ("the '840 patent"); 10,722,273 ("the '273 patent"); and, 9,808,292 ("the '292 patent") (together, "the Asserted Patents"). (D.I. 9). Seven of these patents were asserted in the original complaint;

1

five (including the '777 and '143 patents) were not. (D.I. 1). The Asserted Patents generally relate to spinal implants and systems used to fixate or align a patient's vertebrae. (D.I. 9 at ¶ 7).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Rule 12(b)(7)

Under Rule 12(b)(7), a defendant may move to dismiss a case for a plaintiff's failure to join a required party pursuant to Rule 19. To determine whether the case must be dismissed, the court must first decide whether the party is "necessary" within the meaning of Rule 19(a). *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). An absent party is necessary if either, "(1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998).

If the party is necessary under Rule 19(a) and joinder is feasible, the party is required and must be joined. If the absent party is necessary and cannot be joined, the court must next determine whether the party is considered "indispensable" under Rule 19(b). *Id.* If an absent party is indispensable, the court must dismiss the action. *Gen. Refractories Co.*, 500 F.3d at 312.

### III. DISCUSSION

#### A. Failure to Join a Necessary Party

Dr. Jackson licensed five of the twelve Asserted Patents from Alphatec Spine, Inc.—the '923 patent (Count One), the '667 patent (Count Two), the '265 patent (Count Eight), the '983 patent (Count Nine), and the '840 patent (Count Ten) (together, "the Alphatec Patents"). SeaSpine moves to dismiss Counts One, Two, Eight, Nine, and Ten under Rule 12(b)(7) because Dr. Jackson has failed to join Alphatec as a co-plaintiff. (D.I. 12 at 6).

Only a "patentee" may bring an action for patent infringement. 35 U.S.C. § 281. A "patentee" is a party who owns the patent by issuance or assignment. 35 U.S.C. § 100(d). An

exclusive licensee may only bring an infringement suit in its own name if it holds "all substantial rights" under the patent. *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). Otherwise, the patent owner is a "necessary party" to the litigation under Rule 19, and the licensee must join the patent owner as co-plaintiff. *Id.*

To determine whether an exclusive licensee possesses all substantial patent rights, courts "must ascertain the intention of the parties and examine the substance of what was granted" in the license agreement. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 874 (Fed. Cir. 1991). In determining the scope of the rights transferred by the license agreement, courts consider the licensee's right to (1) use the patent, (2) sublicense the patent, and (3) sue for infringement. *See Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342–45 (Fed. Cir. 2001). It is also "helpful to look at what rights were retained by the grantor." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000).

Dr. Jackson alleges that he "owns substantially all rights and interest" under the Alphatec Patents and thus can bring suit in his own name. (D.I. 9 at ¶¶ 10, 12, 19, 21, 23). In support, Dr. Jackson produces the "Amended and Restated Alphatec Spine License Agreement" (the "Alphatec Agreement") and the "First Addendum to Amended and Restated Alphatec Spine License Agreement" (the "Addendum"). (D.I. 9-1, Ex. 1; D.I. 26-1).

The Addendum provides in relevant part:

> Alphatec Spine hereby grants to Jackson and their successors and assigns an exclusive (except as stated below), perpetual license, with the unlimited right for Jackson or their successors or assigns to grant sublicenses to third parties [to] the [Alphatec Patents]. Alphatec Spine and any successor to substantially all of the business of Alphatec Spine shall retain the rights to manufacture, sell and distribute products based upon the [Alphatec Patents] but shall not have the right to sublicense the [Alphatec Patents] to third parties. . . . Either party may institute enforcement actions to enforce the [Alphatec Patents] against third-party infringers and any costs in enforcing the [Alphatec Patents] against third-party

4

infringers shall be shared equally by the parties and any recovery shall be shared equally; however, either party may opt out of such infringement enforcement at any time to avoid the costs of enforcement provided that any recovery against third-party infringers shall be divided pro rata based upon each party's respective legal fees and out-of-pocket expenses for such enforcement. . . . Other than the mutual promises made and the mutual benefits derived from this Agreement, no other consideration shall be paid by Jackson and their successors and assigns or their . . . sublicensees in connection with the [Alphatec Patents] License.

(D.I. 9-1, Ex. 1, § 4.01(g)).

Alphatec also retains the right to consult on the "filing and content of any application, amendment, submission or response" Dr. Jackson files in connection with the Alphatec Patents and the right to file its own applications and amendments to the Alphatec Patents in consultation with Dr. Jackson. (*Id.*). The Alphatec Agreement provides, "Jackson may not assign this Agreement without the written consent of Alphatec Spine (such consent not to be unreasonably denied) . . . ." (D.I. 23-1, § 13.02).

Dr. Jackson argues that the rights conferred here are similar to the rights conferred in *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000). (D.I. 16 at 5). In *Speedplay*, the licensee was granted an exclusive, royalty-free right to use and sublicense the patent. *Speedplay*, 211 F.3d at 1250. The patentee did not retain any rights to practice the patent. *Id.* at 1251. The licensee was also granted the right to enforce the patent, and the patentee retained the right bring an infringement action if the licensee did not. *Id.* The Federal Circuit held that the patentee's right to sue was "illusory" because the licensee "can render that right nugatory by granting the alleged infringer a royalty-free sublicense." *Id.* Thus, the Federal Circuit held that the licensee had been granted substantially all patent rights and had standing to maintain the suit. *Id.* at 1249.

SeaSpine responds that this case is more closely analogous to *Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995). (D.I. 12 at 7–8; D.I. 17 at 3). In *Abbott*, the licensee's usage rights were subject to a limited right of the patentee to make, use, and sell products embodying the patented invention and to prior licenses granted by the patentee. *Abbott*, 47 F.3d at 1129. The licensee was granted the right to sue for infringement, and the patentee retained the right to bring an infringement action if the licensee did not. *Id.* at 1132. The licensee could grant sublicenses, but it had to pay annual royalties on the sales of the sublicensees. *Id.* at 1129. The patentee also retained the right to prevent the licensee "from assigning its rights under the license to any party other than a successor in business." *Id.* at 1132. Considering the scope of the rights granted to the licensee and retained by the patentee, the Federal Circuit held that the licensee had not been granted substantially all patent rights. *Id.*

I find that the license agreement in this case is closely analogous to the agreement in *Speedplay*. Dr. Jackson was granted an exclusive, royalty-free right to use and sublicense the patent, and the ability to sue for infringement. Although Alphatec retained the right to enforce the patents, this right to sue is "illusory." Dr. Jackson has been granted the unfettered right to sublicense the Alphatec Patents—he does not have to pay royalties on the sales of the sublicensees and Alphatec retained no right to grant sublicenses. Thus, as with the licensee in *Speedplay*, Dr. Jackson can render Alphatec's right to sue nugatory by granting the third-party infringer a royalty-free sublicense.

The license agreement does provide that Dr. Jackson cannot assign the agreement without the consent of Alphatec. But unlike the patentee's right to restrict an assignment of the agreement in *Abbott*, Alphatec's consent cannot be unreasonably withheld. Because Alphatec's

6

right to restrict any assignment of the agreement is limited, I find that this consent requirement does not significantly restrict the scope of Dr. Jackson's rights. *See Speedplay*, 211 F.3d at 1251–52 (holding that a nearly-identical consent requirement "does not significantly restrict the scope of Speedplay's rights in the '778 patent").

Unlike the patentee in *Speedplay* (and similar to patentee in *Abbott*), Alphatec retained the right to make, use, and sell products embodying the patented invention. While the patentee's retention of the right to practice the patent does favor a finding that there was not a transfer of substantially all patent rights, I do not find this fact to be dispositive in this case. Dr. Jackson has an exclusive, perpetual license to use the patented technology, the unfettered right to sublicense the patents, and the right to effectively control the enforcement of the patents. Alphatec's retention of the right to practice the patents—effectively a non-exclusive license—does not significantly restrict the substantial rights granted to Dr. Jackson. *See United Access Techs., LLC v. Verizon Internet Servs., Inc.*, 2021 WL 1200650, at *8 (D. Del. Mar. 26, 2021) (holding that the grantor's retention of the right to "exploit" the licensed patents failed to establish that the grantor had standing to maintain an infringement suit without the exclusive licensee).

Thus, I find that Alphatec transferred substantially all the rights in the Alphatec Patents to Dr. Jackson. Dr. Jackson has standing to maintain this lawsuit without joining Alphatec as a co-plaintiff. SeaSpine's motion to dismiss Counts One, Two, Eight, Nine, and Ten under Rule 12(b)(7) is denied.

### B. Induced Infringement

Pursuant to 35 U.S.C. § 271(b), "Whoever actively induces infringement of a patent shall be liable as an infringer." Liability under § 271(b) "requires knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Thus, "for an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus., Inc. v. Trim–Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up)

### 1. Knowledge of Infringement

Dr. Jackson alleges that he provided SeaSpine's CEO, Keith Valentine, "notice of his threaded spherical shank head technology (which includes U.S. Patent No. 8,540,753)" at a conference in 2017, and "Mr. Valentine agreed at the time to look into the issue." (D.I. 9 at ¶ 33). He also alleges that he had "discussions throughout the Summer of 2018" with SeaSpine where he "provided notice to SeaSpine that it was engaging in the unauthorized use of Dr. Jackson's spine implant inventions and exclusively owned technology protected by the '753, '292 and '923 patents." (*Id.*). The parties "discussed SeaSpine's Mariner product in connection with these patents." (*Id.*). On September 15, 2020, Dr. Jackson sent a letter to SeaSpine which "alerted SeaSpine to each of the Asserted Patents (among others) and pointed out that the Mariner, Malibu and NewPort products all required such a license." (*Id.* at ¶ 34; *see also* D.I. 12, Ex. A (providing a copy of this letter)).

In the September 15, 2020 letter, Dr. Jackson offered SeaSpine a license for "his enabling technologies." (D.I. 12, Ex. A at 2). He further stated that if the parties could reach an

8

agreement without the need for litigation or inter partes review, "any past infringements would be cured with monthly payments going forward with NO interest." (*Id.*). Otherwise, if Dr. Jackson did have to file suit, "any past infringements for sales of the existing Newport, Malibu, Daytona and Mariner screws would be paid in one lump sum including accrued interest." (*Id.* at 2–3). Dr. Jackson attached a list of 67 "licensable" patents, including ten of the twelve Asserted Patents, namely, the '923, '667, '753, '740, '445, '265, '983, '840, '273, and '292 patents. (*Id.*, Ex. A).

In this letter, Dr. Jackson offers a license, identifies ten Asserted Patents, names the accused Newport, Malibu, and Mariner systems, and provides notice of infringement. This is sufficient to plead knowledge of the ten patents and their infringement. Thus, Dr. Jackson has sufficiently alleged pre-suit knowledge of infringement of these ten patents at least as of September 15, 2020.[1]

The 2020 letter, however, does not identify the '777 or '143 patents. Dr. Jackson alleges that SeaSpine had knowledge of the '777 patent because Dr. Jackson offered SeaSpine a license to the '753 patent, of which the '777 patent is a continuation. (D.I. 9 at ¶ 101). Similarly, Dr. Jackson alleges that SeaSpine knew of the '143 patent because the '143 patent is a continuation of the '272 patent, which was identified in the 2020 letter. (*Id.* at ¶ 109). These allegations are insufficient to support an inference of actual knowledge of the patents, let alone knowledge of infringement. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012) (holding that the fact that the accused infringer had knowledge of a patent related

---

[1] Although some of the Asserted Patents may be entitled to an earlier start date for induced infringement (*see, e.g.*, D.I. 9 at ¶¶ 33, 74), I do not need to decide that for purposes of this motion.

to the patent-in-suit was not sufficient to demonstrate a plausible claim of pre-suit knowledge of the patent-in-suit). Thus, I grant SeaSpine's motion to dismiss Dr. Jackson's claims for induced infringement of the '777 and '143 patents.

### 2. Specific Intent

"[S]pecific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). "Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (cleaned up).

For each induced infringement count, Dr. Jackson alleges, with some slight variation, "SeaSpine has the specific intent to encourage surgeons to directly infringe [the Asserted Patents] by using and/or assembling components of the Mariner screw products . . . . SeaSpine provides the components used in the completed bone anchor assembly for the Mariner screw products along with instructions and tools to accomplish this assembly." (*See, e.g.*, D.I. 9 at ¶ 57). SeaSpine argues that this is insufficient to support an inference of specific intent because Dr. Jackson does not identify the "instructions and tools," allege how SeaSpine provides the "instructions and tools" to surgeons, or allege how the "instructions and tools" relate to the Asserted Patents. (D.I. 12 at 13).

SeaSpine's argument is frivolous. Dr. Jackson's allegations are sufficient to plead specific intent. *See, e.g., M2M Sols. LLC v. Telit Commc'ns PLC*, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) (holding that an allegation that "Defendants provided instructions to their customers on use of those products in a manner that would directly infringe the patent" was sufficient to plead specific intent). Contrary to SeaSpine's arguments, it is not necessary for Dr. Jackson allege how SeaSpine provides the "instructions and tools" to surgeons or how the "instructions and tools" relate to the Asserted Patents.

Dr. Jackson has sufficiently alleged facts to state a claim for inducement infringement of the '923, '667, '753, '740, '445, '265, '983, '840, '273, and '292 patents. Thus, I will deny SeaSpine's motion with respect to these patents.

### C. Contributory Infringement

Under § 271(c), "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." To state a claim for contributory infringement, a complaint must plead facts plausibly showing that (1) "there is direct infringement," (2) "the accused infringer had knowledge of the patent," (3) "the component has no substantial noninfringing uses," and (4) "the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

As I concluded above, Dr. Jackson has sufficiently pled pre-suit knowledge of the '923, '667, '753, '740, '445, '265, '983, '840, '273, and '292 patents. Because Dr. Jackson has failed

11

to plead pre-suit knowledge of the '777 and '143 patents, I will grant SeaSpine's motion to dismiss Dr. Jackson's contributory infringement claims for these patents.

Dr. Jackson alleges that SeaSpine contributes to the infringement of the Asserted Patents by selling the accused screw products to surgeons as part of surgical trays. (*See, e.g.*, D.I. 9 at ¶ 58). He alleges, for example, "These components, such as the 'pedicle screw' and 'body member' etc., as claimed, comprise material components of the 'variable angle spinal assembly' of at least claim 4 of the '923 patent and are designed, configured and adapted to work with each other and have no substantial purpose other than as part of infringing devices and are accordingly not staple articles of commerce." (*Id.*).

SeaSpine argues that Dr. Jackson's allegations are insufficient because he only recites examples of components that contribute to the infringement rather than each component that contributes to the infringement. (D.I. 12 at 16). SeaSpine does not provide any case law that requires a complaint to list each and every component, and I do not think that level of specificity is necessary at the pleading stage. Dr. Jackson's allegations are sufficient to state a claim for contributory infringement as he has specifically identified at least a few components that contribute to the infringement.

SeaSpine also argues that Dr. Jackson has failed to plead sufficient facts regarding lack of substantial non-infringing uses. (D.I. 12 at 16–17). "The Federal Circuit has ruled that affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, 2015 WL 4036951, at *7 (D. Del. July 1, 2015) (citing *In re Bill of Lading*,

681 F.3d 1323, 1339 (Fed. Cir. 2012)), *report and recommendation adopted*, 2015 WL 4477699 (D. Del. July 22, 2015).

The First Amended Complaint states that the material components "are designed, configured and adapted to work with each other and have no substantial purpose other than as part of infringing devices and are accordingly not staple articles of commerce." (D.I. 9 at ¶ 58). This "affirmative pleading [of] the absence of substantial non-infringing uses renders the claim plausible." *Merck Sharp & Dohme*, 2015 WL 4036951, at *7; *see also Express Mobile, Inc. v. Squarespace, Inc.*, 2021 WL 3772040, at *5 (D. Del. Aug. 25, 2021) (holding that the complaint met the plausibility pleading standard where the plaintiff stated that there was no substantial non-infringing use).

For these reasons, SeaSpine's motion to dismiss Dr. Jackson's contributory infringement claims is denied as to the '923, '667, '753, '740, '445, '265, '983, '840, '273, and '292 patents.

### D. Infringement Under the Doctrine of Equivalents

Dr. Jackson alleges that the accused systems infringe the Asserted Patents "either literally or under the doctrine of equivalents." (*See, e.g.*, D.I. 9 at ¶ 53). SeaSpine argues that this allegation is insufficient to state a claim for infringement under the doctrine of equivalents because Dr. Jackson does not plead any facts supporting this theory and his infringement charts only demonstrate literal infringement. (D.I. 12 at 18).

Dr. Jackson's allegations are sufficient. "These disclosures and allegations are enough to provide [SeaSpine] fair notice of infringement of the asserted patents." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *see also Promos Techs., Inc. v. Samsung Elecs. Co.*, 2018 WL 5630585, at *2 (D. Del. Oct. 31, 2018) (holding that plaintiff is not limited

13

to the one asserted claim identified in the asserted patent). SeaSpine does not identify any cases in which a doctrine of equivalents allegation has been appropriately struck or otherwise dismissed at the pleading stage when the allegation accompanies a sufficient literal infringement allegation. (D.I. 12 at 18; D.I. 17 at 9). Thus, I deny SeaSpine's motion to dismiss Dr. Jackson's claims for infringement under the doctrine of equivalents.

### E. Willful Infringement

SeaSpine moves to dismiss Dr. Jackson's claims for willful infringement. (D.I. 12 at 19). A determination of willfulness requires a finding of "deliberate or intentional" infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020).

As I concluded above, Dr. Jackson has sufficiently pled knowledge of the patent and knowledge of the risk of infringement for the '923, '667, '753, '740, '445, '265, '983, '840, '273, and '292 patents. Thus, I will deny SeaSpine's motion with respect to these patents. Because Dr. Jackson has failed to plead pre-suit knowledge of the '777 and '143 patents, I will grant SeaSpine's motion to dismiss Dr. Jackson's willful infringement claims for these patents.

### IV. CONCLUSION

An appropriate order will issue.

Entered this 14 day of February, 2022.

*Richard G. Andrews*
United States District Judge