**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROGER P. JACKSON, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1784-RGA |
| | ) | |
| SEASPINE HOLDINGS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the court in this patent infringement action is the motion of plaintiff

Roger P. Jackson, M.D. ("Plaintiff") to dismiss defendant SeaSpine Holdings Corporation's

("SeaSpine") inequitable conduct counterclaims for failure to state a claim and to strike

SeaSpine's third and eighth affirmative defenses under Federal Rules of Civil Procedure 12(b)(6)

and 12(f), respectively. (D.I. 90)[1] For the following reasons, I recommend that the court

GRANT-IN-PART Plaintiff's motion to dismiss and GRANT-IN-PART Plaintiff's motion to

strike.

## I.   BACKGROUND

Plaintiff filed this case on December 30, 2020 and subsequently amended the complaint

on two occasions. (D.I. 1; D.I. 9; D.I. 79) The second amended complaint ("SAC") alleges

causes of action against SeaSpine for infringement of nine patents: U.S. Patent Nos. 7,377,923

("the '923 patent"), 10,588,667 ("the '667 patent"), 8,540,753 ("the '753 patent"), 10,278,740

---

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 91, D.I. 92, D.I. 97, and D.I. 100. The briefing on Plaintiff's motion to strike SeaSpine's third affirmative defense of unclean hands / waiver cross-references the arguments made in prior briefing on the issue, found at D.I. 47, D.I. 57, and D.I. 60. (D.I. 91 at 19; D.I. 97 at 17 n.7)

("the '740 patent"); 10,561,445 ("the '445 patent"); 10,952,777 ("the '777 patent"); 9,662,143

("the '143 patent"); 10,722,273 ("the '273 patent"); and 9,808,292 ("the '292 patent;"

collectively, the "Asserted Patents"). (D.I. 79 at ¶¶ 47-142)  The Asserted Patents generally

relate to spinal implants and systems used to fixate or align a patient's vertebrae.  (*Id.* at ¶ 7)

On November 28, 2022, SeaSpine filed its answer and counterclaims to the SAC.  (D.I.

83)  SeaSpine's pleading includes a nineteenth counterclaim and an eighth affirmative defense

for inequitable conduct based on Plaintiff's alleged false statements to the U.S. Patent and

Trademark Office ("USPTO") during the prosecution of certain Asserted Patents.  (*Id.* at 18, ¶¶

78-139)  SeaSpine's Third Affirmative Defense alleges that Plaintiff's claims are barred by

unclean hands and waiver based on Plaintiff's alleged assignment of his ownership rights to the

inventions to NuVasive, a defendant sued for infringement of certain overlapping patents in

related Civil Action No. 21-53-RGA.  (*Id.* at 17)

Specifically, the inequitable conduct counterclaim describes three affirmative

misrepresentations Plaintiff made to the USPTO: (1) a false representation regarding the

allegedly unintentional abandonment of the application leading to the '777 patent in a petition to

revive; (2) a false representation regarding the priority date of the '777 patent; and (3) a false

declaration of inventorship regarding the '292, '273, '445, '740, '753, '777, and '143 patents.

(*Id.* at ¶¶ 78-139)

## A.    The '777 Patent[2]

The '777 patent resulted from Plaintiff's filing of U.S. Patent Application No. 12/462,623

("the '623 application") on August 6, 2009.  (D.I. 83 at ¶ 91)  The '623 application is a

---

[2] The facts are taken from the allegations in SeaSpine's counterclaims.  (D.I. 83)  For purposes of
clarity, the court has attempted to reconcile typographical errors in the pleading by confirming
details against public patent records.  For instance, the pleading identifies the date of the petition

2

continuation of the '753 patent, filed on October 5, 2004, and it also claims priority to U.S. Patent No. 6,964,666 ("the '666 patent"), filed on April 9, 2003,[3] as a continuation-in-part. (*Id.*) The USPTO rejected the '623 application in August of 2012, Plaintiff submitted amended claims in response to the office action, and the USPTO again rejected the '623 application in a final rejection dated December 5, 2012. (*Id.* at ¶¶ 93-95)

On May 10, 2013, Plaintiff requested a continued examination of the '623 application and proposed amendments to the rejected claims. (*Id.* at ¶ 96) The USPTO issued a non-final rejection on December 18, 2013 (the "2013 Office Action"), identifying U.S. Patent Application Publication No. 2008/0243189 to Purcell (the "Purcell publication") as a prior art reference reading on certain limitations in the claims of the '623 application. (*Id.* at ¶¶ 97-98) The Purcell publication, which subsequently issued as U.S. Patent No. 8,298,265, is a continuation of the '923 patent and shows the upward threaded loading of polyaxial screws into receptacles. (*Id.* at ¶ 98) Plaintiff did not file a timely response to the 2013 Office Action, and the USPTO issued a notice of abandonment of the '623 application on August 12, 2014. (*Id.* at ¶¶ 100-03)

On May 10, 2019, Plaintiff filed a petition to revive the '623 application, representing that the six-year delay in prosecuting the application was unintentional. (*Id.* at ¶¶ 104, 111) Plaintiff also filed a response to the 2013 Office Action and a new set of claims, arguing that the new claims of the '623 application recited features that were supported by U.S. Application No. 10/409,935, issued as the '666 patent, and those claims therefore had an effective filing date of

---

to revive as May 10, 2019 (*see* D.I. 83 at ¶¶ 104, 107), and May 19, 2019 (*see id.* at ¶¶ 108-10). The pleading also refers to the '623 application as "the '263 Application" more than once. (*Id.* at ¶ 111)
[3] The face of the '666 patent indicates that it was filed on April 9, 2003. At various points, SeaSpine's pleading identifies the filing date of the '666 patent as April 4, 2004 (D.I. 83 at ¶ 91), April 4, 2003 (*id.* at ¶ 119), and the correct date of April 9, 2003 (*id.* at ¶ 114).

April 9, 2003. (*Id.* at ¶ 114) As a result, Plaintiff argued that the Purcell publication was not prior art to the '623 application because it claimed priority to the '923 patent's filing date of May 19, 2004. (*Id.*) The USPTO issued a notice of allowance, and the '623 application issued as the '777 patent on March 23, 2021. (*Id.* at ¶ 111)

## B.   The '850 Patent[4]

On May 18, 2004, the inventors of U.S. Patent Application No. 10/848,946, which issued as the '923 patent, assigned their rights to the invention to Alphatec. (D.I. 83 at ¶ 122) Plaintiff also entered into development and licensing agreements with Alphatec in 2007 and 2008. (*Id.* at ¶ 123) Plaintiff subsequently entered into an agreement with Alphatec to obtain exclusive rights to the '923 patent and related patents in July of 2016. (*Id.* at ¶ 119 n.4)

On October 30, 2007, Plaintiff filed Provisional Application No. 61/000,964 ("the '964 provisional"), which recited a polyaxial pedicle screw head similar to the one shown in the application leading to the '923 patent. (*Id.* at ¶ 124) The following year, Plaintiff filed U.S. Patent Application No. 12/290,244 ("the '244 application"), which later issued as U.S. Patent No. 7,967,850 ("the '850 patent"). (*Id.* at ¶ 125) SeaSpine's pleading avers that the subject matter of the '850 patent and the asserted claims of the '923 patent overlap. (*Id.* at ¶ 133)

---

[4] Again, for purposes of clarity, the court has attempted to reconcile typographical errors in SeaSpine's pleading by confirming details against public patent records. For instance, the pleading identifies the application leading to the issuance of the '850 patent as "Application Number 12/290/444." (D.I. 83 at ¶¶ 125-26) The face of the '850 patent indicates that the correct application number is 12/290,244. The pleading also incorrectly identifies the filing date of Application Number 61/000,964 as December 27, 2007. (*Id.* at ¶ 124) The correct filing date, as identified at paragraph 15 of the answer portion of SeaSpine's pleading, is October 30, 2007. (*Id.* at ¶ 15)

The '740 and '445 patents claim priority to the '850 patent as continuations of the '850 patent. SeaSpine alleges that Plaintiff represented himself as the "original, first, and sole inventor" of the claimed subject matter in the '740 and '445 patents. (*Id.* at ¶ 138)

## II.   LEGAL STANDARDS

### A. Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the pleading and view them in the light most favorable to the nonmovant. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Goddard Sys., Inc. v. Gondal*, C.A. No. 17-1003-CJB, 2018 WL 1513018, at *4 (D. Del. Mar. 27, 2018).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead

5

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### B. Motion to Strike

"Rule 12(b)(6) does not offer a mechanism for dismissing an affirmative defense." *Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012). Instead, a court "may strike from a pleading an insufficient defense" under Rule 12(f). Fed. R. Civ. P. 12(f). Generally, motions to strike under Rule 12(f) are disfavored and "[a] court should not strike a defense unless the insufficiency is 'clearly apparent.'" *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). However, "a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009).

### III.   DISCUSSION

### A. Motion to Dismiss for Failure to State a Claim

Plaintiff moves to dismiss SeaSpine's inequitable conduct counterclaim, which alleges that Plaintiff made false statements during prosecution of certain Asserted Patents. (D.I. 91 at 8-15) Pleading inequitable conduct requires "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or

6

misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Knowledge and intent may be averred generally. *Id.* at 1328.

### 1. Petition to revive the '623 application

Plaintiff contends that SeaSpine's first theory of inequitable conduct, based on alleged false statements in the petition to revive the '623 application, should be dismissed because it does not identify specific misrepresentations made with an intent to deceive and does not include facts showing how any misstatements were material. (D.I. 91 at 7-8) I recommend that the court deny Plaintiff's first ground for dismissal because SeaSpine's inequitable conduct counterclaim adequately identifies the false statement, establishes its materiality to the issuance of the '777 patent, and explains why it is reasonable to infer the false statement was made with specific intent to deceive the USPTO.

SeaSpine's counterclaim identifies the allegedly false statement, averring that Plaintiff "falsely stated to the Patent Office that 'the entire delay in filing the required reply [to the 2013 Office Action] was unintentional.'" (D.I. 83 at ¶ 111) The counterclaim also explains how this statement was but-for material to the allowance of the '623 application. By describing Plaintiff's failure to file a timely response to the 2013 Office Action and the USPTO's subsequent issuance of a Notice of Abandonment, the pleading establishes that Plaintiff's petition to revive the '623 application was necessary to reopen prosecution and pursue an allowance. (D.I. 83 at ¶¶ 100, 103-04) The pleading states that the '777 patent would not have issued if Plaintiff's petition to revive had not characterized the delay as "unintentional": "But for [Plaintiff's] false statement to the Patent Office that the 'entire delay' was 'unintentional,' the Patent Office would not have granted the petition and revived the ['623] Application, and the '777 Patent would not have

issued." (*Id.* at ¶ 111)  The materiality allegations are plausible because 37 C.F.R. § 1.137(b)(4)

confirms that a statement of unintentional delay is a requirement of a petition to revive.  *See*

*Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *10 (D.

Del. Feb. 3, 2012) ("The clear nexus between the alleged misrepresentations, the circumstances

in which they were made, and the resulting impact they had on the Examiner's decision, leads to

a reasonable inference of but-for materiality.").

      The counterclaim also plausibly alleges that Plaintiff intended to deceive the USPTO by

representing that the delay was unintentional.  *See Exergen*, 575 F.3d at 1328-29 (explaining that

intent may be averred generally, so long as there are sufficient allegations of underlying facts

from which the court can infer a specific intent to deceive the USPTO).  The counterclaim

alleges that Plaintiff received notice of the 2013 Office Action but chose not to respond, leading

to the abandonment of the '623 application.  (D.I. 83 at ¶¶ 99-103)  The pleading further alleges

that Plaintiff continued to prosecute his other pending patent applications and filed several new

patent applications during the approximate six-year period between the issuance of the 2013

Office Action and the submission of the petition to revive in 2019.  (*Id.* at ¶¶ 105-07)  It is

reasonable to infer from these factual allegations that Plaintiff intentionally chose not to pursue

prosecution of the '623 application while he continued to actively prosecute numerous other

applications.

      Plaintiff focuses on the counterclaim's allegation that he did not disclose the reasons for

his delay in filing the petition to revive, arguing that 37 C.F.R. § 1.137(b) requires no such

explanation.  (D.I. 91 at 8; D.I. 83 at ¶ 108)  Regardless, it is undisputed that § 1.137(b) does

require a statement that the delay was unintentional as a condition of granting a petition to

revive.  (D.I. 91 at 8) (quoting from Plaintiff's petition for revival: "A grantable petition requires

the following items: . . . Statement that the entire delay was unintentional."). SeaSpine's counterclaim alleges that Plaintiff's petition to revive included the required representation that the delay was unintentional, but it maintains that this representation was false. (D.I. 83 at ¶ 111) Plaintiff's argument is that the representation in the petition for revival must be accepted as true, and the court need look no further, because no explanation for the delay is required. Plaintiff's argument is contrary to the requirement that the court must accept as true the plausible averments in the counterclaim on a motion to dismiss.

Plaintiff argues that Federal Circuit precedent precludes the court from deriving a basis for inequitable conduct from a standard form petition for "unintentional" abandonment under 37 C.F.R. § 1.137(b). (D.I. 91 at 8) But the Federal Circuit's decision in *Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co.* is not on all fours with the circumstances before the court in the instant case. 731 F.3d 1239 (Fed. Cir. 2013). In *Network Signatures*, the Federal Circuit evaluated an inequitable conduct claim based on a patentee's allegedly false representation of "unintentional" delay in the payment of maintenance fees on an issued patent under 37 C.F.R. § 1.378. *Id.* at 1243. The matter came before the Federal Circuit on a motion for summary judgment, and the appellate court evaluated the inequitable conduct claim under the clear and convincing evidence standard. *Id.* In finding there was no clear and convincing evidence of inequitable conduct, the Federal Circuit explained that the delay in the payment of maintenance fees lasted only two weeks, and the patentee's conduct "did not affect the issuance of the patent." *Id.* at 1243-44. Here, in contrast, the delay lasted more than five years, during which the patentee actively prosecuted numerous other applications. And unlike the delayed payment of maintenance fees for an issued patent, the issuance of the '777 patent depended on the revival of the '623 application. Viewing the facts in the light most favorable to the

nonmoving party at this stage of the case, SeaSpine has plausibly pleaded that Plaintiff intended to deceive the USPTO by falsely representing that the delay in responding to the 2013 Office Action was unintentional so that he could successfully revive the '623 application.

### 2. Disclosure of references in the '623 application's IDS

Plaintiff characterizes SeaSpine's allegation that Plaintiff "buried" relevant references in the information disclosure sheet ("IDS") for the '623 application, which led to the issuance of the '777 patent, as an independent theory of inequitable conduct.  (D.I. 91 at 9-11; *see* D.I. 83 at ¶ 92)  In a footnote, SeaSpine responds that the mention of burying relevant references in the IDS was meant to bolster allegations of bad faith and intent to deceive, and it was not intended as a standalone theory of inequitable conduct.  (D.I. 97 at 11 n.3)

SeaSpine's position that the counterclaim asserts no independent theory of inequitable conduct based on "burying" references in an IDS is not compelling because "courts traditionally do not consider arguments presented entirely in footnotes." *Northwestern Univ. v. Universal Robots A/S*, C.A. No. 21-149-MN et al., 2022 WL 903892, at *6 (D. Del. Mar. 28, 2022) (citing cases).  Paragraph 92 of SeaSpine's counterclaim states that Plaintiff "filed a first information disclosure sheet for the '623 Application in which [he] identified 317 patent publications and patent documents and 33 foreign patent documents, within which individual relevant references were buried, rendering 'disclosure' of those relevant references purposely ineffective." (D.I. 83 at ¶ 92)  This averment does not plausibly allege an independent theory of inequitable conduct based on failure to disclose material references.  "[A]n applicant cannot be guilty of inequitable conduct if [an allegedly withheld] reference was cited to the examiner." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358 (D. Del. 2009) (quoting *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000)).  Moreover, the allegation does not identify

10

which references were allegedly material or how those references would have impacted the examiner's consideration of the '623 application.  For these reasons, I recommend that the court grant Plaintiff's motion to dismiss paragraph 92 of SeaSpine's inequitable conduct counterclaim alleging the failure to adequately disclose material references by burying them in the IDS.

### 3. Priority date of the '777 patent claims

SeaSpine's inequitable conduct counterclaim also alleges that Plaintiff falsely stated the '777 patent claims were supported by the specification of the '666 patent and were therefore entitled to an effective filing date of April 9, 2003, predating the '923 patent the examiner had cited to reject the claims in the 2013 Office Action.  (D.I. 83 at ¶¶ 113-19)  Plaintiff argues that SeaSpine's pleading is deficient because it does not allege the requisite factual bases to support this theory of inequitable conduct.  (D.I. 91 at 12-15)  SeaSpine responds that Plaintiff's arguments go to the merits of the inequitable conduct counterclaim and are not properly resolved on a motion to dismiss.  (D.I. 97 at 12-13)

I recommend that the court deny Plaintiff's motion to dismiss SeaSpine's theory of inequitable conduct based on the priority date of the '777 patent claims.  The pleading states Plaintiff falsely represented that the claims of the '777 patent were supported by the '666 patent in his response to the 2013 Office Action.  (D.I. 83 at ¶¶ 113-14)  To plead facts showing the alleged falsity of this statement, SeaSpine references Plaintiff's December 2007 response to an office action on another patent application in which Plaintiff took a position inconsistent with the one taken in his response to the 2013 Office Action on the '623 application.  (*Id.* at ¶¶ 115-18)  Plaintiff's knowledge of the falsity of this representation can be inferred because it purportedly conflicts with Plaintiff's prior representations to the USPTO regarding other patent applications.

Plaintiff challenges the factual accuracy of SeaSpine's pleaded allegations regarding what is disclosed in the prosecution history of the '777 patent, citing passages from examiner office actions and Plaintiff's responses thereto that he contends "directly refute[ ]" SeaSpine's pleading. (D.I. 91 at 13-15)  The court cannot address disputed facts on a motion to dismiss. *See Bayer Cropscience AG v. Dow Agrosciences LLC*, C.A. No. 10-1045-RMB-JS, 2012 WL 1253047, at *3 n.4 (D. Del. Apr. 12, 2012) (explaining that the court must accept as true the well-pleaded facts, and cannot "weigh the facts and address the merits of [the] averments").

The pleading also sufficiently alleges the but-for materiality of the false statement.  The counterclaim alleges that the examiner asserted the Purcell publication "would be prior art against the '623 Application if the claims were not supported by the specification of the '666 Patent." (D.I. 83 at ¶ 98)  Like the pending claims of the '623 application, the Purcell publication "showed the upward threaded loading of polyaxial screws into receptacles[.]"  (*Id.*)  Absent Plaintiff's misrepresentations in his response to the 2013 Office Action about the recited features of the '666 patent, it is reasonable to infer that the '777 patent would not have been allowed because Plaintiff could not otherwise claim priority to a reference predating the '923 patent.  (*Id.* at ¶ 114)  Plaintiff argues that this allegation "is *directly refuted* by the patent prosecution as a whole," but factual disputes about the entire contents of the prosecution history cannot be resolved on a motion to dismiss.  (D.I. 91 at 15; D.I. 100 at 6)

The pleaded allegations also plausibly allege specific intent to deceive the USPTO at this stage of the proceedings.  The counterclaim focuses on the alleged inconsistencies in Plaintiff's representations to the examiner during prosecution of the '777, '666, and '321 patents and explains that Plaintiff purposefully tied the '777 patent claims to the substance of the '666 patent to achieve a priority date that would predate the invalidating '923 patent.  (D.I. 83 at ¶¶ 114-18)

For these reasons, I recommend that the court deny Plaintiff's motion to dismiss SeaSpine's inequitable conduct counterclaim based on the priority date of the '777 patent. *See Samsung Elecs. Co., Ltd. v. Netlist, Inc.*, C.A. No. 21-1453-RGA, 2022 WL 3027312, at *6 (D. Del. Aug. 1, 2022).

### 4. Declaration of inventorship

SeaSpine's third theory of inequitable conduct is based on allegations that Plaintiff misrepresented himself as the original, first, sole inventor of the claimed subject matter in at least the '445 and '740 patents. (D.I. 83 at ¶¶ 121, 132)  Plaintiff's challenge to the viability of this theory focuses on the specific intent requirement.  Specifically, Plaintiff alleges that he disclosed the patent publication which led to the issuance of the '923 patent to the examiner, and this action refutes any reasonable inference of specific intent to deceive the USPTO. (D.I. 91 at 15-17; D.I. 92, Ex. F at 3)  SeaSpine responds that Plaintiff's arguments go to the merits of the inequitable conduct counterclaim and cannot properly be resolved on a motion to dismiss. (D.I. 97 at 14-16)

I recommend that the court deny Plaintiff's motion to dismiss SeaSpine's theory of inequitable conduct based on alleged false statements made in Plaintiff's declaration of inventorship. *See Zadro Prods., Inc. v. SDI Techs., Inc.*, C.A. No. 17-1406-WCB, 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019) ("In this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter.").  The pleading alleges that Plaintiff falsely held himself out as the "original, first, and sole inventor" of the polyaxial screw head claimed in the '850 patent, even though this feature was previously disclosed by Purcell in the '923 patent dating back to May 19, 2004. (D.I. 83 at ¶¶ 121-24, 132-33)  The counterclaim further explains that Purcell assigned the rights to the '923 patent to

Alphatec in May of 2004, and Plaintiff subsequently entered into developing and licensing agreements with Alphatec in 2007 and 2008. (*Id.* at ¶¶ 122-23)  The same patent prosecution counsel, John McMahon, filed and prosecuted patent applications for both Alphatec and Plaintiff, and Plaintiff's applications began featuring the same polyaxial screw head shown in the '923 patent. (*Id.* at ¶¶ 124-27)  These factual allegations plausibly allege that Plaintiff knew Purcell invented the polyaxial screw head design and nonetheless held himself out as the sole inventor of this feature with the specific intent to deceive the USPTO.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff maintains that his disclosure of the patent publication leading to the issuance of the '923 patent during prosecution of the '850 patent negates the plausibility of his alleged intent to deceive. (D.I. 91 at 16-17)  But the disclosure of the '923 patent during prosecution of the '850 patent is not, by itself, decisive on a motion to dismiss where affirmative false statements made during prosecution conflict with the disclosure.  Plaintiff's reliance on *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1384 (Fed. Cir. 1998), in which the Federal Circuit remanded a post-trial decision on inequitable conduct to the district court to weigh evidence pointing away from deceitful intent, highlights the fact that the issues raised by Plaintiff are not properly resolved at this stage.  There, the Federal Circuit instructed the trial court to weigh evidence of a copendent application's disclosure during prosecution against evidence supporting specific intent, such as the fact that the same attorneys prosecuted both applications and were aware of the overlap between the inventions. *Id.* at 1383-84.  The impact of the '923 patent's disclosure during prosecution on the specific intent analysis raises factual disputes to be resolved at a later stage of the proceedings.  The post-trial posture of *Akron* and the Federal Circuit's remand of the case with instructions for the district court to weigh competing evidence supports a conclusion that

14

dismissal of SeaSpine's declaration of inventorship theory at this stage of the case would be premature. *Id.*; *see also ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 503 (D. Del. 2016) (denying motion for summary judgment where circumstantial evidence of deceptive intent precluded a finding of no inequitable conduct as a matter of law).

In his reply brief, Plaintiff also suggests that a review of an information disclosure statement ("IDS") filed by Purcell on an unspecified patent application discloses patents issued to Plaintiff predating the '923 patent. (D.I. 100 at 7-8)  But those earlier patents are not asserted in this case, and issues regarding disclosures made in unasserted patents of unknown relevance are factual in nature and are not appropriately resolved in Plaintiff's favor at this stage of the proceedings.  Consequently, I recommend that the court deny Plaintiff's motion to dismiss the declaration of inventorship theory of inequitable conduct in SeaSpine's counterclaim.

### 5.  Infectious unenforceability

Plaintiff further contends that SeaSpine's allegations of infectious unenforceability must fail because the pleading does not identify any immediate and necessary relationship between the inequitable conduct and the patents sought to be held unenforceable. (D.I. 91 at 17-18)  Under the doctrine of infectious unenforceability, inequitable conduct associated with one patent may render related patents unenforceable if the inequitable conduct bears "an immediate and necessary relation" to the enforcement of related patents. *Guardant Health, Inc. v. Found. Medicine, Inc.*, C.A. No. 17-1616-LPS-CJB *et al.*, 2020 WL 2477522, at *5 (D. Del. Jan. 7, 2020) (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).  The "immediate and necessary relation" requires that "the inequitable conduct that occurred earlier in the chain [of issued patents] must be related to the targeted claims of the ultimately-issued patent or patents sought to be enforced." *eSpeed, Inc. v. Brokertec USA,*

*L.L.C.*, 417 F. Supp. 2d 580, 595 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007) (internal citations and quotation marks omitted).

I recommend that the court deny Plaintiff's motion to dismiss SeaSpine's allegations of infectious unenforceability. The pleading alleges that Plaintiff's inequitable conduct during the prosecution of the '777 and '850 patents infects the '292, '273, '445, '740, '753, '777, and '143 patents. (D.I. 83 at ¶¶ 112, 120, 139) The '292, '740, and '445 patents confirm on their face that they are continuations of the '850 patent. Moreover, SeaSpine's pleading incorporates by reference its initial invalidity contentions which provide greater detail on the immediate and necessary relation among the Asserted Patents. (D.I. 83 at 16; Ex. A at 4-12) Plaintiff reiterates that inequitable conduct in one patent application does not automatically render all later-issued patents in the same chain unenforceable, but his cited authority confirms that this determination is generally not made at the pleading stage. *See eSpeed*, 417 F. Supp. 2d at 595 (addressing post-trial motions following a jury verdict); *Robocast, Inc. v. Apple*, 39 F. Supp. 3d 552, 570 (D. Del. 2014) (considering infectious unenforceability argument on motions for summary judgment).

### B. Motion to Strike Affirmative Defenses

Having recommended that the court deny Plaintiff's motion to dismiss SeaSpine's inequitable conduct counterclaim, I further recommend that the court deny Plaintiff's motion to strike SeaSpine's eighth affirmative defense of inequitable conduct because the counterclaim and affirmative defense rise or fall together. *See Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013).

Plaintiff also moves to strike SeaSpine's third affirmative defense of unclean hands and waiver. (D.I. 91 at 19-20; D.I. 47 at 5) The equitable defense of unclean hands requires a showing that the plaintiff "is guilty of conduct involving fraud, deceit, unconscionability, or bad

faith" and must be pled with particularity under Rule 9(b). *Sonos, Inc. v. D&M Holdings Inc.*, C.A. No. 14-1330-RGA-MPT, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016). The affirmative defense of waiver requires a showing of (1) an existing right; (2) knowledge of the right; and (3) an actual intention to relinquish the right. *Id.*

SeaSpine's equitable defenses of unclean hands and waiver are based on its position that Plaintiff sold and assigned ownership rights to the claimed inventions in the Asserted Patents to NuVasive. (D.I. 83 at 17) Plaintiff contends that SeaSpine's third affirmative defense should be stricken because the court already found that none of the asserted patents in Civil Action No. 21-53-RGA were sold or assigned to NuVasive, and there is therefore no factual support for SeaSpine's unclean hands and waiver defenses. (D.I. 91 at 19-20; D.I. 47 at 5-6)

The court's decision in Civil Action No. 21-53-RGA interpreted NuVasive's 2014 agreement with Plaintiff as a matter of law and concluded that Plaintiff's assignment only covered the recited technology in the agreement and not the technology claimed or disclosed in the patents asserted in that action. (C.A. No. 21-53-RGA, D.I. 36 at 5) The ruling resolved NuVasive's facial challenge to Plaintiff's standing and the court viewed the allegations in the complaint in the light most favorable to Plaintiff pursuant to Rule 12(b)(1). (*Id.*) Because the court found the contract was unambiguous, it interpreted the assignment provisions as a matter of law. The court determined the scope of the assigned technology under the contract did not include the technology in the patents asserted against NuVasive, none of which had been mentioned in the agreement. (*Id.*) SeaSpine cites no authority that would permit it to re-litigate the court's interpretation of a contract to which SeaSpine is not a party. Thus, it cannot assert an affirmative defense supported by an interpretation of the assignment agreement that contradicts

the court's interpretation of it.[5]  Consequently, I recommend that the court grant Plaintiff's

motion to strike SeaSpine's third affirmative defense with respect to the '292 and '273 patents,

which are also asserted in Civil Action No. 21-53-RGA, to avoid the risk of inconsistent rulings.

The decision in Civil Action No. 21-53-RGA did not address whether the '143, '445,

'777, '753, '740, '923, and '667 patents are covered by Plaintiff's 2014 licensing agreement with

NuVasive, and Plaintiff presents no argument specific to these patents in its briefing on the

motion to strike.  (D.I. 91 at 19-20; D.I. 60; C.A. No. 21-53-RGA, D.I. 36)  Because the

insufficiency of SeaSpine's affirmative defenses as to these patents is not "clearly apparent," I

recommend that the court deny Plaintiff's motion to strike the third affirmative defense as it

pertains to the '143, '445, '777, '753, '740, '923, and '667 patents. *See Fesnak & Assocs., LLP*

*v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Plaintiff's

motion to dismiss SeaSpine's inequitable conduct counterclaim.  Specifically, I recommend that

the court GRANT the motion to dismiss paragraph 92 of the counterclaim as it pertains to the

alleged "burying" of prior art references in an IDS, and I recommend that the court DENY the

motion to dismiss the inequitable conduct counterclaim in all other respects.  I recommend that

the court DENY Plaintiff's motion to strike SeaSpine's affirmative defense of inequitable

conduct, GRANT Plaintiff's motion to strike SeaSpine's affirmative defense of unclean hands

and waiver regarding the '292 and '273 patents, and DENY Plaintiff's motion to strike

---

[5] SeaSpine previously represented that it deferred to the court in Civil Action No. 21-53-RGA on
the interpretation of NuVasive's 2014 assignment contract with Plaintiff.  (D.I. 23 at 1-2 & 7 n.5)

SeaSpine's unclean hands and waiver defenses regarding the '143, '445, '777, '753, '740, '923, and '667 patents. (D.I. 90)

I further recommend that the court ORDER SeaSpine to file an amended pleading for the sole purpose of correcting typographical errors identified in this Report and Recommendation. Substantive changes to the amended pleading are not permitted absent further leave of court. The amended pleading should be filed within one week following the expiration of the deadline for objections, if any, and the court's ruling on any such objections.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.


Dated: August 11, 2023

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE